Rendal B. Miller
Bar No. 12257
Miller Law, Inc.
115 West 5th Street, Box 7
Winnemucca NV 89445
Telephone: 775 623-5000
info@millerlawinc.us

ATTORNEY FOR PLAINTIFFS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| Bobby D. Sanchez, Vinton Hawley, Johnny Williams, Jr., Robert James, and Ralph Burns,<br><br>              Plaintiffs,<br><br>v.<br><br>Barbara K. Cegavske, in her official capacity as Secretary of State for the State of Nevada, The County of Washoe, a political subdivision organized under the laws of the State of Nevada, the County of Mineral, a political subdivision organized under the laws of the State of Nevada, Marsha Berkbigler, Bob Lucey, Kitty Jung, Vaugn Hartung, and Jeanne Herman, in their official capacities as Washoe County Commissioners, Nancy Black, Paul MacBeth, and Jerrie Tipton, in their official capacity as Mineral County Commissioners, Christopher Nepper, in his official capacity as Clerk-Treasurer of Mineral County, Luanne Cutler, Registrar of Voters for Washoe County.<br><br>              Defendants. | **VERIFIED FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

1

## NATURE OF THE CASE

1.     This action is initiated by Bobby D. Sanchez, Vinton Hawley, Johnny Williams, Jr., Robert James, and Ralph Burns. All Plaintiffs are members of either the Pyramid Lake Paiute Tribe or the Walker River Paiute Tribe, and all Plaintiffs are qualified voters of the State of Nevada pursuant to the Voting Rights Act of 1965, as amended, and other federal and Nevada authority as specified below.

2.     At issue in this case is Defendants' failure to establish a site for in-person voter registration, an in-person early voting site, and an Election Day site[1] (hereinafter "satellite offices") on two reservations, thereby making voting less available to members of the Pyramid Lake Paiute Tribe ("PLPT") and the Walker River Paiute Tribe ("WRPT") in Washoe County and Mineral County in violation of Section 2 of the Voting Rights Act of 1965, the Fourteenth Amendment to the United States Constitution, and the Constitution of the State of Nevada. Specifically, because in-person voter registration and in-person early voting are limited to sites off-Reservation, PLPT Tribal members are required to travel, from their Tribal Capitol at Nixon, Nevada, approximately 48 miles (96 miles round trip) to take advantage of in-person registration and in-person early voting, and to travel 16 miles (32 miles round-trip) to take advantage of election day in-person voting and WRPT Tribal members are required to travel, from their Tribal Capitol

_____

[1] The Walker River Paiute Tribe is not asking for an Election Day site.

at Schurz, Nevada approximately 35 miles (70 miles round trip) to take advantage of in-person registration and in-person early voting in comparison to Anglo residents of Washoe and Mineral Counties. Expert Report of Dr. Daniel Craig McCool ("McCool Report") ¶ 9. Exhibit 1.

3.      Due to socioeconomic factors, such as poverty, homelessness and lack of reliable public and private transportation, and due to the history of racial discrimination and hostility towards PLPT and WRPT Tribal members, the significantly greater distance required for them to reach the voting sites will make it substantially more difficult, if not impossible, for them to take advantage of the convenience and benefits of in-person registration, in-person early voting, and election day in-person voting relative to Anglo residents of Washoe and Mineral County.

4.      As a result, PLPT and WRPT Tribal members do not have an opportunity equal to that of the Anglo residents in Washoe County and Mineral County to use in-person registration and in-person early voting.  PLPT Tribal members living in Nixon, Nevada do not have an opportunity equal to that of the Anglo residents in Washoe County to use election day in-person voting.

5.      Defendants' failure to establish satellite offices has a significant disparate impact on PLPT and WRPT Tribal members' voting power, denies the Plaintiffs' voting rights and is an apparent effort to dilute the voting strength of

3

PLPT and WRPT members.  Plaintiffs allege that this failure to act, if allowed, would reinforce a "history of official racial discrimination in voting."

6.      If such inaction is allowed, the ability of PLPT and WRPT Tribal members to effectively participate in the political process will be hindered. Plaintiffs seek declaratory and injunctive relief, both temporary and permanent, compelling the Defendants to establish satellite office locations in Nixon and Schurz, Nevada.  This relief is sought on the grounds that failure to open the satellite offices is a denial of the equal right to vote, the lack of a satellite office location has a disparate impact upon PLPT and WRPT Tribal members, and that the policy of denying satellite office locations was adopted for a discriminatory purpose.

7.      The failure to establish satellite office locations will result in PLPT and WRPT Tribal members having less opportunity than Anglo citizens to participate in the political process and elect candidates of their choice for federal, state, and county offices.

8.      Defendants have no legitimate, non-racial reason for refusing to establish the satellite offices.

9.      Accordingly, Plaintiffs ask this Court to grant them declaratory and injunctive relief compelling Defendants to establish satellite offices in their Tribal Capitols in Schurz and Nixon, Nevada.

4

## AUTHORITY

10.     This action is brought by the Plaintiffs pursuant to Sections 2 and

12(d) of the Voting Rights Act of 1965, as amended, 52 U.S.C. § 10301 (formerly

codified at 42 U.S.C. 1973); 42 U.S.C. § 1983, providing for civil action for

deprivation of rights; the Fourteenth Amendment to the United States Constitution;

28 U.S.C. §§ 2201-2202 providing for declaratory relief and other necessary or

proper relief; and Article 2 of the Constitution of the State of Nevada.  This Court

has supplemental jurisdiction under 28 U.S.C. § 1367(a) to hear claims under the

Constitution and laws of the State of Nevada.

## JURISDICTION AND VENUE

11.     This case arises under the Constitution and laws of the United States.

This Court has original jurisdiction over this matter pursuant to 52 U.S.C. §

10301(a) and (b); 42 U.S.C. § 1983; 28 U.S.C. §1362; 28 U.S.C. §1331; 28 U.S.C.

§ 1343(a)(3) and (4); and 28 U.S.C. § 2201 and 2202, along with Article III of the

United States Constitution.

12.     Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because

this action is predicated upon a federal question and a substantial part of the events

or omissions giving rise to the claims alleged herein occurred, and will continue to occur, in this District.

## PARTIES

14.   Plaintiff, Bobby D. Sanchez, is an enrolled member and the Chairman of the Walker River Paiute Tribe, and is a registered voter from Mineral County. He resides in Mineral County.

15.   Plaintiff, Vinton Hawley, is an enrolled member and the Chairman of the Pyramid Lake Paiute Tribe, and is a registered voter from Washoe County. He resides in Washoe County. On September 2, 2016, the Pyramid Lake Paiute Tribal Council adopted Resolution No. PL 70-16 thereby supporting the Plaintiffs herein and their efforts to obtain equal access to voting. Exhibit 2.

16.   Plaintiff, Johnny Williams, Jr., is an enrolled member of the Walker River Paiute Tribe and is a registered voter from Mineral County. Plaintiff Williams is a United States Army combat veteran, serving his country in the Vietnam War.

17.   Plaintiff, Robert James, is an enrolled member of the Pyramid Lake Paiute Tribe and is a registered voter from Washoe County. Plaintiff James is a veteran of the United States Navy, serving his country during the Korean conflict.

18.     Plaintiff, Ralph Burns, is an enrolled member of the Pyramid Lake Paiute Tribe and is a registered voter from Washoe County. Plaintiff Burns is a United States Army combat veteran, serving his country in the Vietnam War.

19.     The Pyramid Lake Paiute Tribe and the Walker River Paiute Tribe are federally-recognized Tribes with government-to-government relationships with the United States.

20.     The Plaintiffs desire to participate in the electoral and political processes of Nevada on an equal basis with Anglo residents.

21.     Defendant Barbara K. Cegavske is the Nevada Secretary of State.

22.     Defendant Washoe County, Nevada, is a political and geographical subdivision of the State of Nevada.

23.     Defendant Mineral County, Nevada, is a political and geographical subdivision of the State of Nevada.

24.     Defendant Marsha Berkbigler is a member of the Washoe County Commission and is sued in her official capacity.

25.     Defendant Bob Lucey is a member of the Washoe County Commission and is sued in his official capacity.

26.     Defendant Kitty Jung is a member of the Washoe County Commission and is sued in her official capacity.

27.     Defendant Vaugn Hartung is a member of the Washoe County Commission and is sued in his official capacity.

28.     Defendant Jeanne Herman is a member of the Washoe County Commission and is sued in her official capacity.

29.     Defendant Nancy Black is a member of the Mineral County Commission and is sued in her official capacity.

30.     Defendant Paul MacBeth is a member of the Mineral County Commission and is sued in his official capacity.

31.     Defendant Jerrie Tipton is a member of the Mineral County Commission and is sued in her official capacity.

32.     Defendant Christopher Nepper is the Clerk-Treasurer of Mineral County and is sued in his official capacity. As Clerk-Treasurer, Defendant Nepper, is charged with conducting the elections for Mineral County residents during the Primary and General Elections and any special elections. In addition to his duties relating to elections, Defendant Nepper also serves as the Clerk of the County Commission.

33.     Defendant Luanne Cutler is the Registrar of Voters for Washoe County and is responsible for establishing election precincts, NRS 293.205, designating mailing precincts, NRS 293.213, establishing polling places in residential developments for the elderly, NRS 293.2735, preparing absentee

8

ballots, NRS 293.309, and most, importantly, establishing permanent and temporary polling places for early voting by personal appearance, NRS 293.3561.

## APPLICABLE LAW

34.     Article 2, Section 1 of the Constitution of the State of Nevada provides that "[a]ll citizens of the United States (not laboring under the disabilities named in this constitution) of the age of eighteen years and upwards, who shall have actually, and not constructively, resided in the state six months, and in the district or county thirty days next preceding any election, shall be entitled to vote for all officers that now or hereafter may be elected by the people, and upon all questions submitted to the electors at such election."

35.     NRS 293.2546 provides that each voter shall "have nondiscriminatory equal access to the elections system, including, without limitation, a voter who is elderly, disabled, a member of a minority group, employed by the military or a citizen who is overseas."

36.     NRS 293.485 further defines the qualifications of eligible voters as "[e]very citizen of the United States, 18 years of age or over, who has continuously resided in this State and in the county 30 days and in the precinct 10 days next preceding the day of the next succeeding [election]".

37.     NRS 293.3561 provides that the county clerk is to establish criteria for selection of permanent and temporary polling places for early voting by personal

9

appearance. Upon information and belief, neither Washoe nor Mineral County have established such procedures.

38.    NRS 293.3564 grants to the county clerk the authority to establish permanent polling places for early voting by personal appearance.

39.    NRS 293.3572 authorizes the county clerk to establish temporary branch polling places.

## EARLY VOTING IN NEVADA

40.    Plaintiffs are members of two separate Indian Tribes and hail from two different Indian Reservations. While all Plaintiffs have been denied the same equal access to the ballot regardless of tribe or location, they join with different histories, experiences and demographics.

41.    Incline Village is located in Washoe County on the north shore of Lake Tahoe, and despite the financial resources of its residents, Washoe County has provided the city with a satellite voting office for in-person early voting. Nixon (comprised of over a majority of members from the PLPT) and Schurz (comprised of over a majority of members from the WRPT) residents, on the other hand, do not have great wealth, and zero access to an early voting site within the boundaries of their respective Reservations. According to the McCool Report, nearly half the residents of Nixon are not in the workforce in comparison to Incline Village which is at 5%. McCool Report, ¶ 12. Other socioeconomic differences include:

10

| Statistic | Incline Village | Nixon |
|---|---|---|
| Median Household Income | $70,638 | $26,607 |
| Mean Household Income | 8% of the total population earn less than $10,000 a year | 13.8% of the population earns less than $10,000 per year |
| Owner-Occupied Dwellings – Less than $100,000 | 2.4% | Over 50% |
| Median Value of Home | $678,500 | $81,000 |
| Poverty Rate | | $24.9% |

McCool Report ¶ 12-13.

42.     Over the past decade, Nevada voters' reliance on early voting has dramatically increased. In 2012, 111,189 people voted early in Washoe County and 972 voted early in Mineral County. McCool Report ¶ 9.

43.     For the 2014 general election, the voting statistics were as follows:

| | Total Active Voters | Early Voting | Absentee Voting | Mailing Precinct Ballots | Election Day |
|---|---|---|---|---|---|
| Mineral County | 2,738 | 525 (19.17%) | 30 (1.10%) | 210 (7.67%) | 661 (24.14%) |
| Washoe County | 225,345 | 51,908 (23.03%) | 9,892 (4.39%) | 374 (0.17%) | 54,161 (24.03%) |

Exhibit 3.

## POVERTY OF INDIANS IN THE UNITED STATES

44.     "The ability to obtain an ID to vote, and the act of voting itself, are greatly affected by both education and income. Indeed, it is well-recognized in political science that income and education correlate with voting turnout." Declaration of Daniel McCool, filed in *Brakebill v. Jaeger*, Civ. No. 1:16-cv-8 (North Dakota District Court June 20, 2016) ("McCool Decl.") ¶ 39.  Exhibit 4.

45.     Eight percent (8%) of Anglos have less than a high school education in comparison to Indians which is at 18.1%. *Id*.

46.     20.2% of Anglos have a Bachelor's degree, while only 10.6% of Indians have such a degree. *Id*.

47.     Income level of families correlated with access to Internet. *Id*. at 41-42.  Only between 5 and 10 percent of low-income households have broadband. *Id*. at 42.

48.     The mortality rate for Indians is 943/10,000 in comparison to the nation-wide rate of 774/10,000. *Id*. at 44. Infant mortality among Indians is 13.5 compared to Anglos at 7.5. *Id*. at 44-45.

49.     According to the 2007–2011 ACS, the highest national poverty rates were for Indians and Alaska Natives (27.0% percent).[2]

---

[2] *Poverty Rates for Selected Detailed Race and Hispanic Groups by State and Place. 2007-2011*. American Community Survey Brief (Issued February 2013).

## WASHOE COUNTY

50.     The Pyramid Lake Paiute Tribe's Reservation is primarily located in Washoe County (99.88%).[3] According to the 2010 Census, Washoe County has a population size of 421,407 people.[4]  Of that, 76.9% are Anglos and 1.7% are Indian. *Id*. Washoe County is the second most populous county in Nevada.

51.     Reno is the county seat of Washoe County. According to the 2010 Census, Reno has a population size of 225,221 people.[5] Of that, 74.2% are Anglos and 0.4% are Indian. *Id*.

52.     Washoe County consists of 6,542 square miles of which 99.88% of the Reservation of the Pyramid Lake Paiute Tribe is located.[6]

## PYRAMID LAKE PAIUTE RESERVATION

53.     Plaintiffs have requested that voting satellite office for in-person voter registration and an early voting site be opened in Nixon, Nevada where a great number of its members reside and where socioeconomic factors, combined with the 48 mile trip – one way - to the Washoe County Courthouse, making it difficult, if not impossible, to cast an early vote.

---

[3] https://en.wikipedia.org/wiki/Pyramid_Lake_Indian_Reservation.
[4] U.S. Census Bureau, 2010 Census
[5] American Fact Finder. U.S. Census Bureau.
http://factfinder2.census.gov/faces/tableservices/jsf/pages/productview.xhtml?src=bkmk.
[6] https://en.wikipedia.org/wiki/Pyramid_Lake_Indian_Reservation.

54.     Despite opening 22 early voting locations across Washoe County, the County has never, and still refuses, to open such a site on the Tribe's Reservation. McCool Report ¶ 10. This refusal is made despite the poverty that is prevalent on the Reservation.

55.     In Nixon, which is classified as 96.4% Indian, 5.7% of the residents do not have a vehicle. *Id*. at ¶ 8. The unemployment rate is at 26.1% in comparison to a state average of 9%. *Id*. at 14. Median income in Nixon is $23,281 compared to a median state average of $32,013. *Id*.  The graduation rate in Nixon is 72.1% compared to the state rate of 84.9%. *Id*.

56.     Over half of the residents in Nixon do not have health insurance. *Id*. at ¶ 15.

57.     "They [Indian Tribes] owe no allegiance to the States, and receive from them no protection. Because of the local ill feeling, the people of the States where they are found are often their deadliest enemies." *United States v. Kagama*, 118 U.S. 375 (1886).  Although the *Kagama* decision was issued over 100 years ago, Tribal members' distrust of state and local government is still prevalent.

## MINERAL COUNTY

58.     72.68% of the Walker River Paiute Tribe's Reservation is located in Mineral County with small portions in Lyon and Churchill Counties.[7]  According

---

[7] https://en.wikipedia.org/wiki/Walker_River_Indian_Reservation

to the 2010 Census, Mineral County has a population of 4,772.[8]  Of that, 72.5% are

Anglos and 15.5% are Indian. *Id*.

59.     According to the 2010 Census, Schurz has a population of 658.[9] Of

that, 76 are Anglos and 549 are Indian.

## WALKER RIVER PAIUTE RESERVATION

60.     The Walker River Paiute's land base consists of about 325,000 acres

in a river valley, mostly used for grazing and ranching.[10] The only town on the

Reservation is Schurz, Nevada.

61.     Hawthorne is the only town in which a resident of Mineral County can

cast an early vote. Only 3.18% of the residents of Hawthorne are Indian.[11]

62.     The unemployment rate in Hawthorne is 6.7% in comparison to

24.9% in Schurz. McCool Report ¶ 13.

63.     Vast socioeconomic differences exist in Mineral County:

|  | Hawthorne | Schurz |
|---|---|---|
| Unemployment Rate | 6.7% | 24.9% |
| Percentage of Residents earning less than $10,000 | 4.1% | 26.3% |
| Residents with Income between $50,000 and $99,000 | Over 50% | 27% |

[8] http://www.census.gov/quickfacts/table/PST045215/32021
[9] http://censusviewer.com/city/NV/Schurz
[10] http://www.wrpt.us/
[11] http://censusviewer.com/city/NV/Hawthorne

| Poverty Rate | | 36.7% |
|---|---|---|

McCool Report § 13.

## REQUEST FOR A SATELLITE OFFICE

### Pyramid Lake Paiute Tribe

64.     Washoe County currently maintains 22 early voting sites – 14 of those in Reno, 6 in Sparks and one each in Incline Village and Sun Valley.   McCool Report ¶ 10. None of these locations are situated on the Reservation of the Pyramid Lake Paiute Tribe.

65.     The racial composition of Washoe County is as follows:

| | Total Population | White Population | Percent White | Indian Population | Percent Indian |
|---|---|---|---|---|---|
| Washoe County[12] | 421,407 | 324,070 | 76.9% | 7,209 | 1.7% |
| Reno[13] | 225,221 | 167,179 | 74.2% | 2,835 | 1.3% |
| Sparks[14] | 90,264 | 67,205 | 74.5% | 1,121 | 1.2% |
| Incline Village[15] | 8,930 | 7,790 | 87.2% | 29 | 0.3% |
| Sun Valley[16] | 19,299 | 13,763 | 71.3% | 355 | 1.8% |

[12] http://www.census.gov/quickfacts/table/PST045215/32031,00
[13] http://www.census.gov/quickfacts/table/PST045215/3260600,32031
[14] http://www.census.gov/quickfacts/table/PST045215/3268400,3260600,32031
[15]
http://www.census.gov/quickfacts/table/PST045215/3235100,3268400,3260600,32031

| Nixon[17] | 374 | 11 | 2.94% | 354 | 94.65% |
|---|---|---|---|---|---|

66.     Members of the Pyramid Lake Paiute Tribe must travel 48 miles (96 miles round trip) from their Tribal Capitol to the Washoe County courthouse, i.e., two hours of travel time. McCool Report ¶ 9.

67.     There is no public transportation that travels off-Reservation and 5.7% of the Nixon residents have no access to any vehicle.

68.     On August 9, 2016, Vinton Hawley, Chairman of the Pyramid Lake Paiute Tribe, sent letters to Defendant Washoe Commissioners, and Defendant Luanne Cutler, (along with a copy of a letter to Defendant Cegavske not delivered) thereby requesting equal access to the ballot box. Specifically, Chairman Hawley requested: (1) a satellite office in Nixon, Nevada for 8 days with the same hours as the County Courthouse for registration; (2) an early voting location in Nixon to be opened from October 22, 2016, through November 4, 2016; and (3) in-person site on Election Day in Nixon – the Tribal Capitol.  Healy Aff.  ¶ 3.

69.     Bret Healy, Consultant for Four Directions, hand-delivered the letters to the Washoe County Registrar of Voters office in Reno. *Id*. Mr. Healy was informed that the Registrar was on vacation until August 22, 2016. *Id*.

---

16
http://www.census.gov/quickfacts/table/PST045215/3271600,3235100,3268400,3260600,32031
[17] http://censusviewer.com/city/NV/Nixon

17

70.     A second set of letters requesting a satellite office was delivered to Defendant Cegavske and Defendant Cutler and Defendant Washoe Commissioners on August 11, 2016. *Id*. at ¶ 3-4.

71.     On August 23, 2016, Defendants Cutler, Nepper, and Cegaske were scheduled to have a teleconference regarding the Tribes' request for satellite offices. *Id*. at ¶ 5.

72.     On August 24, 2016, Mr. Healy met with Washoe County election officials who informed him to open a satellite office the following would be required:  (1)  one voting machine; (2) three people ranging from $9-11 per hour with no benefits/fringe of differing political party affiliation; (3) secure location to lock up the voting machine cartridge outside of voting hours; (4) use of an existing "rover" who services the existing early voting sites; (5) a moving company to deliver and return the voting machine to the on-Reservation site; and (6) internet access. *Id*.

73.     On that same day, Defendant Cutler denied the Tribe's request. *Id*. at ¶ 5-6.

### Walker River Paiute Tribe

74.     Currently, the Clerk's office in Hawthorne is the only place in Mineral County where early voting is available.

75.     Population by race in Mineral County is as follows:

18

|  | Total Population | White Population | Percent White | Indian Population | Percent Indian |
|---|---|---|---|---|---|
| Mineral County | 4,772 | 3,462 | 72.5% | 742 | 15.5% |
| Hawthorne[18] | 3,269 | 2,732 | 83.57% | 104 | 3.18% |
| Schurz[19] | 658 | 76 | 11.6% | 549 | 83.4% |

76.     On August 12, 2016, Bobby Sanchez, Chairman of the Walker River Paiute Tribe, sent a request for a satellite office to Defendants Cegavske and Nepper. Healy Aff. ¶ 7.

77.     On August 19, 2016, Defendant Nepper informed Mr. Healy via email that "[he] talked with the Secretary of State's office and they have asked [him] not to respond as this issue is at the state level." *Id.*

78.     On August 24, 2016, Mineral County denied Walker River Paiute Chairman Sanchez's request for an on-Reservation in-person voter registration office and an on-Reservation in-person early voting site for the 2016 general election via email. *Id.* at ¶ 8.

79.     The decision to determine whether and if to establish temporary and permanent polling places is statutorily left to the discretion of the individual counties. Despite this fact, Defendant Cegavske directed the Mineral County

---

[18] http://censusviewer.com/city/NV/Hawthorne
[19] http://censusviewer.com/city/NV/Schurz

19

election official to refrain from responding to the request from the Walker River Paiute Tribe. *Id*.

## BACKGROUND OF DISCRIMINATION

80.     In addition to the depressed socio-economic status of Indians in Washoe and Mineral Counties, there is a long history of racial discrimination against Indians in Nevada.

81.     The members of the Pyramid Lake Paiute Tribe and the Walker River Paiute Tribe are historically classified as Northern Paiute.  In 1859 the Department of the Interior set aside nearly half a million acres in what is now western Nevada as a reservation for the Paiute Indians.[20]

82.     The Paiute War, also known as the Pyramid Lake War, was an armed conflict between Northern Paiutes against intruding Anglos, supported by military forces. It took place in May 1860 in the vicinity of Pyramid Lake in the Utah Territory, now in the northwest corner of present state of Nevada.

83.     The Pyramid Lake War was caused by the onrush of thousands of settlers to the Washoe country searching for silver and gold deposits on the Comstock.[21] By the spring of 1860, the influx of settlers approximately equaled the Northern Paiute population in the area, impinging on their scarce resources and food supply.  *Id*.

---

[20] https://congress.gov/congressional-report/114th-congress/senate-report/216/1
[21] http://www.onlinenevada.org/articles/pyramid-lake-war

84.     In May 1860, a large band of Paiute Indians, along with allied Bannocks and Shoshones, met near Pyramid Lake to discuss options. *Id*. Meanwhile, two brothers at Williams Station had kidnapped two Indian sisters of about twelve years of age, molested and then hidden them. *Id*. A group of warriors rescued them, while in the process killing two of the Williams brothers, along with three other whites, and burning the station. *Id*.

85.     When news of disturbance reached the Comstock settlements, it was determined that the Indians had to be taught a lesson. *Id*. Four detachments of men, totaling 105, were organized in a vigilante, squatter effort. *Id*.

86.     On May 12, 1860, the Northern Paiute lured the motley force into a trap on the banks of the Truckee River. *Id*. An estimated seventy of the white combatants died. *Id*.

87.     A telegraph to California resulted in the arrival of 544 volunteer soldiers from California and the Washoe Country.  *Id*. They were joined by 207 regulars of the United States army. *Id*.

88.     On June 2, 1860, the Paiute and white forces met in a second battle. Only three whites were killed, and the number of Indian losses was unknown.

89.     On October 31, 1864, Nevada became the 36th State and Indians were still not allowed the right to vote.

90.     In 1874 President Ulysses S. Grant by executive order confirmed the existence of the Pyramid Lake Indian Reservation which includes Pyramid Lake, the land surrounding it, the lower reaches of the Truckee River, and the bottom land alongside the lower Truckee.

91.     Although the Paiutes managed to retain their land, non-Indians upstream began diverting the water and lowering the lake level. It was "nearly a constant battle on the part of the Pyramid Lake Paiutes to keep their namesake lake from going dry to the diversions to upstream Anglos." McCool Report ¶ 11.

92.     Indians in Nevada did not get the right to vote until 1924 when Congress passed the Indian Citizenship Act which provided:

> "BE IT ENACTED by the Senate and house of Representatives of the United States of America in Congress assembled, That all non-citizen Indians born within the territorial limits of the United States be, and they are hereby, declared to be citizens of the United States: Provided That the granting of such citizenship shall not in any manner impair or otherwise affect the right of any Indian to tribal or other property.

Pub. L. No. 175, 43 Stat. 253 (1924), codified at 8 U.S.C. § 1401(b)(1982)

93.     Discrimination against minorities is still occurring today in the State of Nevada. For example, on March 7, 2016, Project Vote notified Defendant Cegavske that they intended to file suit if the State for failing "to provide citizens with NVRA-mandated voter registration opportunities through the Department of Motor Vehicles ("DMV").

22

94.     Current voting practices utilized in Nevada discriminate against PLPT and WRPT Tribal members.  These Tribal members currently have limited options to register to vote. First, they can drive to the local election office which is 70 miles round trip for members of the Walker River Paiute Tribe and 96 miles round trip for members of the Pyramid Lake Paiute Tribe. Second, they can drive to the local DMV or public assistance office in Washoe County and Mineral County but this again includes travel as far as to the local election office in their county, and registration in this manner (driving to the local DMV or public assistance office) can only be accomplished through October 7, 2016. Thirdly, these Tribal members can have community members assist them with a paper application. Unfortunately, this comes at a price for the helpful community member, because if they are not a designated field registrar or a staffer from the County office and they fail to sign the application, they have just committed a felony.  Finally, these Tribal members can use online voter registration from the Secretary of State website. However, many members of the PLPT and WRPT do not have ready access to the internet. Assuming they can gain internet access, they still may not have the proper identification for which to register (Need Nevada Driver's license or a Nevada identification card.) Obtaining the necessary identification needed for online registration is expensive. Most standard Nevada licenses are valid for 8 years and cost $42.25. Licenses issued to those 65 and older will be valid for 4 years and

23

cost $18.25. A $26 testing fee applies for knowledge and skills

testing. Identification cards cost $22.25 for those 18 years and older and $8.25 for

those 65 years and older. This is a huge cost for those who are having difficulty

meeting their most basic daily needs, especially when in addition to having to pay

the above fees, they must spend money to travel the 70 mile round-trip (for Walker

River Paiute Tribal members) and 96 mile round-trip (for Pyramid Lake Paiute

Tribal members).  At the 2016 IRS milegae rate ($0.54 per mile), the 70 mile

round-trip costs a Walker River Paiute Tribal member an additional $37.80 on top

of the costs of the Nevada ID or Nevada Driver's License, and the 96 mile round-

trip costs a Pyramid Lake Paiute Tribal member an additional $51.84 on top of the

costs of the Nevada ID or Nevada Driver's License.

## POLARIZATION

95.    It is has been established that Indians across the country typically

favor Democrats. Daniel McCool hypothesizes that sharp restrictions in early

voting may be motivated by partisan gain. McCool Decl. ¶ 25.  As support for his

hypothesis, Mr. McCool states:

> Phyllis Schlafy, the widely-known conservative, candidly said that the North
> Carolina legislature (dominated by Republicans) cut back on early voting
> because it favored democrats: "The reduction in the number of days for early
> voting is particularly important because early voting plays a major role in
> Obama's ground game....early voting is an essential component of the
> Democrats' get-out-the-vote campaign."

*Id.* at ¶ 25-26.

96.    McCool also cites a former GOP chairman in Florida as he explained the motive behind reduced early voting:

> "The Republican Party, the strategists, the consultants, they firmly believe that early voting is bad for Republican Party candidates…It's done for one reason and one reason only …. 'We've got to cut down in early voting because early voting is not good for us,' Greer said he was told by those staffers and consultants. "They never came in to see me and tell me we had a [voter] fraud issue … It's all a marketing ploy."

McCool Decl. ¶ 26.

97.    Matthew A. Barreto, Ph.D proffered that "Native Americans are much more likely to identify as Democrats than non-Native Americans. These differences are statistically significant at greater than 99 percent confidence level in both chi-square tests and regression analysis." Declaration of Matthew A. Barreto, Ph.D filed in *Brakebill v. Jaeger*, Civ. No. 1:16-cv-8 (North Dakota District Court June 20, 2016) ("Barreto Decl.") ¶ 24. Exhibit 6.

98.    The experts' opinions are supported by the voter statistics. In the 2012 elections, votes cast in Hawthorne (a predominantly Anglo community) were in favor of the Republican candidate. Healy Aff. at ¶ 6.  Specifically, 840 individuals voted for Romney and only 583 for President Obama. *Id*. In the alternative, individuals in Schurz (residents are mostly members of the WRPT) predominantly voted for the Democratic candiHdate (47 votes for Romney and 204 for Obama). *Id*. Similarly, in Nixon (residents are primarily members of PLPT) Romney only

received 8 votes but Obama received 88. *Id*. In Incline Village (Anglo community), Romney received 3,063 votes in comparison to those cast for Obama – 2,375.

## CLAIMS

99.     PLPT and WRPT Tribal members in Washoe and Mineral Counties bear the effects of discrimination on the basis of race and tribal status in education, housing, employment, and health services which have resulted in a lower socioeconomic status which hinders their ability to participate effectively in the political process.

100.    Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301, in relevant part, states that it is a violation of the Voting Rights Act, if,

> based on the totality of the circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected… in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

Thus, Section 2 of the Voting Rights Act, as amended, protects Indians from voting practices which have a disparate impact on their right to vote.

101.    In a very recent decision, North Carolina Conference of the *NAACP v McCrory*, ---F.3d-----, 2016 WL 4053033 at 4-5 (July 29, 2016), the Court took notice that "[e]arly voting thus increases opportunities to vote for those who have difficulty getting to their polling place on Election Day."

102.   In *Spirit Lake Tribe v. Benson County, et al.*, CIV 2:10-cv-095

(D.N.D. 2010), the Court noted the following:

> The County asserts that no right to vote in person has ever been recognized
> under the Constitution.  Additionally, the County asserts that the mail-in
> procedure actually solves the transportation problems and will increase voter
> participation.  While such an argument is tenable in communities with stable
> housing arrangements, poverty and transience of the Reservation makes mail
> balloting more difficult for tribal members.  The evidence suggests that
> Indians are more likely to have not received a ballot application, which when
> coupled with a decreased ability to vote in person, creates a disparate
> impact. (internal citations omitted)

103.   In *Poor Bear v. County of Jackson*, 2015 WL 1969760 at 7 (D.S.D.

May 1, 2015), the Court stated:

> This court does not accept defendants' contention that in-person absentee
> voting is always a convenience and thus not actionable under § 2 as
> interpreted in Hood. The Supreme Court stated, "[e]ven without going
> beyond the plain words of the statute, we think it clear that the location of
> polling places constitutes a 'standard, practice, or procedure with respect to
> voting.' " Perkins, 400 U.S. at 387. The Senate Report makes clear that the
> comparative availability of absentee voting is also actionable under § 2.
> S.Rep. No. 97–417, at 30 n. 119 (1982) ("[T]he statute's scope is illustrated
> by a variety of Section 2 cases involving such episode discrimination. For
> example, a violation could be proved by showing that the election officials
> made absentee ballots available to white citizens without a corresponding
> opportunity being given to minority citizens.") Also, plaintiffs are not
> simply asserting that it would be easier to vote absentee in-person than
> voting absentee by mail or voting on election day in person. Rather, the crux
> of plaintiffs' § 2 claim is that the location of in-person absentee voting in
> Jackson County interacts with the socioeconomic factors of poverty and lack
> of access to transportation to deprive plaintiffs and other Native Americans
> who would like to vote absentee in-person—particularly at the time of
> registration—of an equal opportunity to vote. The ability to vote absentee in-
> person must be viewed in conjunction with practical realities—such as
> poverty and lack of transportation—that exist on the Pine Ridge Reservation

and must be compared to the opportunity to vote available to other Jackson County white citizens.

104.   The legitimate interests of the Defendants will not be undermined in the event that the Court grants the relief prayed for herein.

105.   Plaintiffs have no adequate remedy at law.

106.   Plaintiffs will suffer irreparable harm as a result of the violations complained of herein, and that harm will continue unless Defendants' failure to establish satellite offices is declared unlawful and enjoined by this Court.

## CLAIM ONE

## VIOLATION OF THE 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983

107.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

108.   Section 1 of the Fourteenth Amendment of the United States Constitution provides: "No…State shall . . . deny to any person within its jurisdiction the equal protection of the law."

109.   Defendants have no legitimate, non-racial reason for rejecting the Tribes' request that a satellite office be established within the boundaries of the Reservations.

110.   Defendants refused and continue to refuse to establish satellite offices within the boundaries of the Reservations.

28

111.   By engaging in the acts and/or omissions alleged herein, Defendants acted and continue to act under color of state law to deprive the Plaintiffs their rights that are guaranteed by the Fourteenth Amendment to the United States Constitution and Section 2 of the Voting Rights Act and will continue to violate said rights absent relief granted by this Court.

## CLAIM TWO
## VIOLATION OF THE NEVADA CONSTITUTION

112.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

113.   The Defendants have acted under color of state law to deprive the voters of PLPT and WRPT equal elections by arbitrarily failing to establish satellite office locations in Indian Country in violation of the Constitution of the State of Nevada.

## CLAIM THREE
## VIOLATION OF THE VOTING RIGHTS ACT OF 1965

114.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

115.   Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301, protects Plaintiffs from denial or abridgment of the right to vote on account of race, color, or membership in a language minority group. Section 2 provides: "No voting qualification or prerequisite to voting or standard, practice, or procedure shall be

imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color," or membership in a language minority group.  52 U.S.C. § 10301.

116.   Indians are recognized as a language minority group under the Voting Rights Act.

117.   Defendants' failure to establish satellite office locations in Indian Country denies members of the federally-recognized Tribes, including the Plaintiffs, the same rights of other members of the electorate to participate in the political process and elect representatives of their choice, in violation of Section 2 of the Voting Rights Act.

118.   Plaintiffs will continue to suffer the violation of their rights as alleged in the Complaint absent relief granted by the Court.

## RELIEF

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor as follows:

1.   That this Court assume jurisdiction;

2.   That this Court declare that the Defendants' failure to provide satellite office locations in Indian Country violates existing law, including, but not limited to, § 2

of the Voting Rights Act, as amended, the Fourteenth Amendment to the United States Constitution, and the Nevada Constitution;

3.     That this Court grant preliminary and permanent injunctive relief by ordering Defendants to establish satellite office locations with in-person early registration and in-person early voting in Indian Country immediately for the 2016 primary election and for the full period authorized by Nevada law for all future elections, and further relief as the interest of justice may require;

4.     Issue an order pursuant to Section 3(c) of the Voting Rights Act, 52 U.S.C. § 10302(c) requiring Washoe and Mineral County to obtain preclearance, for a necessary and appropriate period of time, from the Attorney General of the United States for any and all future changes in voting law, upon a determination that Washoe and Mineral Counties have shown that the proposed changes to not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color;

5.     Grant plaintiffs reasonable attorneys' fees, litigation expenses and costs pursuant to 42 U.S.C. § 1973(e) and § 1988; and

6.     Grant the Plaintiffs any further relief which may in the discretion of the Court be necessary and proper to ensure that the voting rights of Indians within Nevada are properly respected in accordance with the Orders of this Court.

Dated this 13 day of Sept, 2016.

**Rendal B. Miller**

Miller Law, Inc.
115 West 5th Street, Box 7
Winnemucca NV 89445
Telephone: 775 623-5000

ATTORNEY FOR PLAINTIFFS

## VERIFICATION

_____ declares pursuant to 28 U.S.C. § 1746:

I am one of the plaintiffs in this case.  I have read the foregoing complaint and the contents thereof are true to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 12, 2016.

Vinton Hawley

33